The next case this morning is 523-0437, People v. Christopher Williams. Arguing for the appellant is Gary Geisler. Arguing for the appellee is Jamie Bella. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning. Mr. Geisler, you represent Mr. Williams. Would you like to proceed? Yes, Your Honor. You may do so. All right, thank you. Good morning. May it please the court and counsel, we're here for the appeal of a case that has at least two unique features that I have not observed in any case before in my 47 years of practice. It is an extremely unique feature when the victim, the sole eyewitness to a case on cross-examination, admits that he cannot be certain that there was any touching that occurred between the defendant and the child's anal area. The court will recall that there were four counts of conviction here. Counts one and five involving the touching of the penis. Counts two and six involving the touching of the anus, the rectum. Under the circumstances of this case, that extremely unique feature of this case should mean that the convictions of counts two and six should not stand. The cross-examination of the victim of L.H. can be found in the record at pages 704 and 705, and it's also spelled out in the appellee's brief at page six, which makes it clear that reasonable doubt does exist. The testimony on direct and redirect only serves to muddy the waters. The reasonable doubt existed when the child talked to the family at the family meeting in the comfortable setting of the family's home, and the child made reference to some blowing or sniffing of his bottom, of his butt. And there was no testimony involving contact at that time. At the time of the forensic interview, the child didn't verbally say anything but did write some things out, and with regards to counts two and six, the child said, nose on butt. So at trial, on cross-examination, the fact that the I think is crucial in the determination of this case on appeal. And the standard is not whether there is a scintilla of evidence on behalf of the state with regards to those counts, but whether the evidence, when viewed in a light most favorable to the state, that no rational finder of fact could have found the crime to have been proved beyond a reasonable doubt. So the reasonable doubt standard is applied even on the appellate level. The state, as I say, only muddied the waters by getting L.H. to agree on direct and redirect that there was touching, because touching does not suggest sexual gratification or arousal. Touching does not necessarily mean that there was any form of friction, rubbing, licking, stroking. Friction is totally missing from this case, even if you look at the testimony that was elicited by the state. And there were five separate occasions here for the child to have been able to state that there was some sort of friction. The family meeting, the forensic interview, the direct, the cross, and the redirect. In all five of those occasions, it's totally missing. So I would suggest that involving the penis that there is adequate evidence. There is no evidence to support the convictions with regards to counts two and six. I'd like to move on now and talk about the second unique feature of this case, which is that there was a determined effort by the state to prove and highlight the evidence of the sexual assault of Antonio Thornell, which was not the crime on trial. This was other crimes evidence, and it was a focus of the trial, which is in error. We heard not only the testimony of Antonio Thornell of the touching, we also heard him testify about the conduct of the defendant from his visits in the home, going way beyond just a description of the touching. We not only heard testimony of Antonio Thornell, we also heard testimony from the other three boys that were in the home that weekend, and the parent who picked up the boys. And on top of all of that, we heard testimony of a DNA expert who testified with regards to the DNA with regards to the touching by Antonio Thornell. Not only that, but we then heard testimony by Officer Carr, who testified about the search of the residence, again going to touching of Antonio Thornell, and he even testified about the extraction from the defendant's telephone, again relating only to Antonio Thornell. The trial court, in listening to the, in hearing the post-trial motion, the trial court attempted to quantify the evidence in terms of how much was spent on Antonio Thornell, and the trial court made reference to his recollection of 25 minutes of testimony. However, if you look at the record, there's 98 pages of testimony regarding the touching of Antonio Thornell, and that doesn't include the 41 pages of testimony by Officer Carr with regards to the search of the house and the extraction of the telephone. You compare that with the 38 pages of testimony by L.H. in this particular case. Again, other crimes evidence must not become a focal point of the trial, and the standard does not say that the other crimes evidence must not become the sole focus, but the standard is a focus, and clearly in this particular case, a major focus of this case was the evidence with regards to Antonio Thornell. The evidence with regards to the rock-shaped penis, the penis-like rock, and also the pinching of the penis, all of that, which I continue to try to say was prejudicial, it all relates to the other crimes evidence of Antonio Thornell. I'd like to move on and talk about the sentencing in this particular case. The counts one and five sentences of 16 years, counts two and six sentences of six years, but all of these sentences are for the same offense with the same range of sentence. The court then at the post-trial hearing said that 22 years was considered sufficient for each separate date of offense, which I believe is a improper lumping of sentences, but it is an inconsistency of the court, of the trial court, to say that six years is sufficient, but then giving 16 years for the same class of offense, which had the same range of sentence. So, I believe that the sentence, sentencing in this case, was in error and abuse of discretion for three different reasons. First of all, the lumping of the sentences. Secondly, because of the inconsistency, but thirdly, because of the totality of the sentences. The totality of the sentences is 44 years for a 56-year-old man who has a life expectancy of only 23.48 years. I believe that the sentencing in this particular case was the abuse of discretion, and I would stand on my brief with regards to the other points raised. Thank you. Thank you. Okay, Mr. Geisler. Justice Moore, any questions? No, no questions. Justice Scholar? No questions. All right, Mr. Geisler, you'll have a time for rebuttal after Ms. Bella gives us the state's argument. Thank you, Your Honor. Ms. Bella, for the state. Good morning, Your Honors. May it please the court. My name is Jamie Bella on behalf of the people of the state of Illinois. With regard to most of the issues, obviously with five issues, there's not time to address each one specifically, so with any arguments that I'm unable to discuss today, I'll stand on my brief with regard to those arguments. Turning to the first issue regarding the sufficiency of the evidence, I covered the specific evidence for each specific element in my brief, but I do want to touch quickly on the case of People v. Richmond, which is cited in the appellant's opening brief as well as in the reply brief. I just want to touch quickly on what that case was about and why that case is distinct from this case. In the Richmond case, the defendant was arrested based on a complaint by the victim regarding anal penetration. The victim, in her statement, never gave any indication that there was any kind of vaginal penetration of any kind. When the defendant was arrested and questioned, he made a comment that he had attempted to penetrate the victim vaginally but was unable to do so after several attempts. When the state charged the defendant, the evidence at trial from the state was limited to just the statements from the victim, and like I said, none of those allegations from the victim involved any kind of vaginal penetration or even touching. There was simply no comment or evidence presented at all. On appeal, the defendant raised the corpus delecti rule, which essentially forecloses a conviction based solely on the evidence from a defendant's confession. So since the defendant was the only source of any indication regarding vaginal penetration at all, and none was presented by the state whatsoever, then the court was unwilling to consider the closeness of the contact between anal and vaginal penetration as clearing that standard. So in that case, excluding the defendant's interrogation, that there was any kind of vaginal touching, then the state's case was left with no evidence whatsoever, not even a single piece of testimony regarding that. So in that case, there was no evidence and the sufficiency of the evidence obviously then resulted in a reasonable doubt. So the reversal there was very different here. Essentially, the question is whether the evidence was sufficient or whether there was like counsel mentioned. It's not that there was a scintilla of evidence by the state, but in Richmond, there was none at all, none whatsoever, not even any that the jury could infer touching from. There was just simply nothing. In this case, there was, and while counsel points out that the the victim's testimony on direct and then cross and then on redirect kind of went back and forth. And as I discussed in my brief, I think that is due in large part to the nature of the questioning. And on page six, page five and six of my brief, I included the specific testimony where basically the questioning was about the sniffing, the smelling, and whether he felt the smelling. And then on redirect, the state asked him specifically if his nose touched and the victim said yes. So in that case, you have two different references to it. And then the jury, in that case, under the Collins standard, those discrepancies and any conflict between testimony has to be resolved by the jury. So unlike in Richmond, there was nothing for the jury to resolve there. In this case, there was something for the jury to resolve and they resolved it in favor of the state. I don't know if there's any questions with that. I'd like to move on just quickly. I want to emphasize with regards to issue two, I can't say enough that with regard to this statute, the notion that the victim should have been subjected to a test essentially by the trial court, by putting him on the stand in front of the defendant and then gauging any level of discomfort or distress that the victim was experiencing. And then the trial court would have needed to make his ruling based on whether it was able to determine whether the victim was actually traumatized by the in-court testimony. I don't think the statute requires that and I think that's for a good reason. The purpose of the statute is to protect... How old was the child? I'm sorry? How old was the child? At the time of the trial. At the time of trial, he was nine. I can't recall how close to the trial the hearing was. He was seven at the time of the offense and nine. So he was either between seven and nine years old at the time of the hearing. I don't recall the date specifically of the hearing and what age he would have been on that date if he'd have been forced to take the stand and demonstrate how distressed he would have been. I think the purpose of having the testimony of... In this case, it was the counselor, the victim's advocate who... I can't remember her specific title. But the purpose of having the testimony of another person, an adult essentially, and we had a mom in the Scott case, a counselor in the Rajner case, a DCFS investigator in the Van Brocklin case. And I think for good reason we have these adults who are able to make a competent judgment based on the victim's level of trauma and their coping ability. And the idea of taking one of these victims and subjecting them to the very specific harm that the statute's trying to prevent just as a means to determine whether or not he should qualify for protection at all, I think it would defeat the entire statute to protect the child from that exact thing, forcing him to experience that exact thing. By that time, the statute would serve no purpose at all. Then it would be a question of whether the victim was being forced to go through it a second time at the actual trial. And I don't think that there's any law or any precedent anywhere that would support that contention, and the state adamantly objects to any kind of implication that that should be the And then I'd like to touch quickly on the sentencing issue. Before you go there, before you go there, Ms. Bella, I haven't heard you talk about the relevancy of the admissibility of Antonio's testimony. How was that relevant? So the relevancy of the Antonio testimony, of course, as your honors are aware, it was admitted under the statute for, it was allowed for any relevant purpose, including propensity. And the testimony with regard to, now this case, this is a little different than general other crimes. This was happening contemporaneously. So the two victims, the allegations, presented near the same time. So there wasn't a, this isn't an old case. They were happening not in lockstep, but they were happening at the same time. So in the Anthony or Antonio case, there was the evidence there regarded the support for the state's position, that there was a large and very calculated amount of grooming that went into the conduct at issue. So you'll know in the state's brief, there's a discussion about the layout of the defendant's house, that it was equipped. Now the defendant had no children and he lived, he wasn't married. So essentially, his home was where he lived alone, was outfitted to the teeth with toys and games and lures for children. And these other children, the testimony, while the two Brylin and the other friend, they were, their testimony supported the idea that the defendant was very inviting for children and lured children to his home and then undertook the efforts to break down the sexual barriers with these children. For example, the rock, the testimony about the pinching and those sort of things, they all go to support the the intent and the motive behind the conduct that the defendant was engaged in leading up to the time. When you speak of a rock, would you describe what you're talking about? There's a, it's regarding issue four, I believe, the defendant, he raises an issue about the relevancy of a rock that was found in the defendant's closet that was shaped like a penis. And who made that determination? Which, that the rock? What the shape was like, it was found in a closet. Well, there's pictures of it in there, but also the testimony of the children, that he would play with it with them and tease them with it and ask them whether or not their penis was bigger or smaller than this rock. And he would wake them up by touching them with it. And then you can look, if you see the picture of it, you can see the resemblance. I see that my time is run. Well, I know that your time is run, but I have some questions. I mean, I don't understand how you get to prove the substance of the crime when you get to potentially admit the testimony of Antonio, but all of this other evidence that the state put in, I don't know how that's relevant under the statute that allows the admission of the testimony of the second child. Of Antonio, specifically, or the rock? Antonio, specifically, all of it, the other boy, the rock, the DNA. I don't understand how that's relevant under the propensity statute. Well, the propensity, so if the state's able to give evidence showing that the defendant has a propensity to engage in sexual conduct with children or, you know, to commit sex offenses, then the evidence regarding his other purpose. So, with regards to... I'm not disputing the fact that potentially the victim could testify. Is there a case that you could point me to where all of this other evidence is allowed to come in to show propensity? A case saying that... That shows that the evidence beyond the testimony of the child is allowed to come in? The rock, all of that. So, the case I can think of off the top of my head is Cardamone, and in that case, the court found that there was entirely too much, but I'll say specifically with regard to... That case was found to be an extreme case, but it gives an indication, at least, with respect to that being the upper... There were several hundred instances testified to by just half of the complaining victims in that case, and in that case, those complaining victims, the ones whose testimony was not included in the several hundred, included acts that went way beyond what was alleged in the indictment.  But when it goes beyond the purpose to exceed, you know, it goes beyond in excess of what is intended for, you know, what it's intended to prove, then it becomes prejudicial. So, the test requires a balance between what was the evidence admitted for and was more than what was necessary to prove that point offered at trial. So, in this case, the question of what the evidence was the grooming, the behaviors that the defendant engaged in to lure the children and to groom them and to break down the sexual barriers. So, while the specific DNA evidence was essentially to... Because there was an insinuation by the defense that these testimony or the complaint by L.H., the victim in this case, that it was sort of fabricated based on the allegation that had been raised by A.T. So, essentially, that these two conspired in some way to accuse the defendant where the defense or the DNA evidence proves that that offense actually did occur. And then A.T. and L.H., they didn't know each other. These were not two children who spoke, who had any type of contact together. So, to disprove that there was a conspiracy between these two victims to allege this misconduct and also to support the state's theory as to intent and grooming and those sort of things. So, the question at that point was the evidence that was offered so far in excess of what was necessary to prove that, that it kicked the balance over to more prejudicial than probative. All right. I understand your argument. How do you spell cardamom? C-A-R-D-A-M-O-N-E. The citation is in my brief. I believe it's also in the defendant's reply brief. Okay. I will find that. That's no problem. All right. Your time has expired. Justice Moore, questions? No questions. Justice Scholar? No questions. Okay. Mr. Geisler, rebuttal? Yes. Thank you, Your Honor. Again, if it pleases the court, I would like to talk about the prejudicial effect of the testimony about Antonio Thornell just in rebuttal. And I believe that the evidence was prejudicial and it was also more than simply showing propensity. Here we have seven, at least seven witnesses who testified about this. This was far more than just Antonio Thornell testifying, just giving a brief description of what had occurred to him. We went way beyond that, not only beyond that, but we went so far as to get into the extraction of the defendant's and the DNA testimony, again, with regards to Antonio Thornell. Obviously, all of this has a prejudicial effect when you view the cumulative amount of evidence with regards to the Antonio Thornell case versus the very slight amount of evidence that there was with regards to the case that actually was on trial. With regards to that, it really came down to the defendant, I'm sorry, to L.H.'s testimony. And, of course, the court will recall that there was testimony that his sister was sleeping directly next to him and she didn't wake up, she didn't notice anything at all. So there's a definite difference between the amount of evidence presented with regards to the two cases and it, in fact, bootstrapped the evidence against the defendant with regards to the charges that were actually on trial. With regards to the Richmond case, I will only add briefly that I think the Richmond case is applicable here because it does demonstrate, in a case where you have two different kinds of touching, the fact that there is one type of sexual touching that occurs doesn't lead to any sort of inference that the other type of touching occurs. There has to be sufficient evidence with regards to both kinds of touching and I think that Richmond goes to that effect. Thank you. Okay, thank you, Mr. Geisler. Thank you, Ms. Bella, for your arguments here today on behalf of Mr. Williams. This matter will be taken under advisement and we will issue an order in due course unless my justices have any other questions. Justice Moore? No questions. Justice Shulman? No questions. Okay, thank you both for your participation today.